*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re L. HENRICH, Minor.

UNPUBLISHED
August 17, 2023

No. 364283
Kent Circuit Court
Family Division
LC No. 20-051629-NA

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

YATES, P.J. (concurring).

I recognize that vacating an order terminating parental rights is a decision that carries with it substantial consequences, but I agree with my colleagues that the trial court's order terminating the parental rights of respondent-father must be vacated here. My primary concern, though, is that termination of parental rights is antithetical to the best interests of the child, LH. Thus, although I have no sympathy for respondent-father, who has flouted the trial court's orders and undermined many of the efforts of others to achieve reunification, I am firmly convinced LH deserves a better fate than termination of his father's parental rights at this juncture.

Even when "there are grounds for termination of parental rights[,]" termination cannot be ordered unless that outcome "is in the child's best interests[.]" MCL 712A.19b(5). The trial court must find by a preponderance of the evidence that termination of parental rights is in a child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In making that best-interest determination, the trial court may consider the " 'child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]' " *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The court may also "consider visitation history, . . . the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *In re Sanborn*, 337 Mich App 252, 277; 976 NW2d 44 (2021). The best-interest analysis focuses on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

LH is now nearly 13 years old, and he faces many uncommon challenges in his young life. For better or for worse, he has enjoyed a close bond with his father throughout his life. That bond is so significant that the investigating Children's Protective Services worker recommended, at the outset of this case, that LH should continue living with his father despite an allegation of physical

-1-

abuse by his father on one occasion. Although the record is replete with evidence that respondent-father balked at demands made of him by the trial court and caseworkers, he nonetheless attended all his supervised parenting-time visits with LH. At the dispositional-review hearing in November 2021, the caseworker reported that respondent was doing well in supportive visitation and that the parenting times with LH went well. At the permanency planning hearing in September 2022, the supervising caseworker testified that respondent was very affectionate with LH, there was a close bond between respondent and LH, and respondent very much wanted LH returned to him. Despite all of that, the supervising caseworker recommended the initiation of termination proceedings due in large part to respondent's resistance to basic requirements, such as drug testing and the release of his counseling records.

The termination hearing focused upon respondent-father's obstinance, including his refusal to engage in drug testing and his unwillingness to authorize release of his counseling records. But testimony at the termination hearing also revealed that, during parenting-time visits, respondent-father was often appropriate and did some very good things. The supervising caseworker further noted that, in respondent-father's first meeting with her, he was cooperating and communicating well, and he generally continued to communicate effectively with her throughout her dealings with him. Beyond that, the supervising caseworker acknowledged that removing LH from respondent-father's care had been traumatic for LH, and she admitted that LH was placed in a foster home that was not a relative foster-care home or a pre-adoptive home. In other words, LH would not achieve permanency in his current setting. In ordering termination of respondent-father's parental rights, the trial court conceded that respondent had completed the parenting classes that he was assigned, a substance-abuse assessment, and a psychological evaluation, but respondent did not comply with drug-testing orders and did not release information showing that he benefited from therapy.

To its credit, the trial court displayed remarkable patience in dealing with respondent-father throughout the case. Respondent-father's defiant attitude about participating in drug testing and releasing his counseling records is indefensible in a child-protective proceeding, but the sins of the father ought not be visited upon his child through the termination of parental rights. After all, the focus in the best-interest analysis is on the child, rather than the parent. *Schadler*, 315 Mich App at 411. Here, after carefully considering the best interests of LH, I am convinced that termination of respondent-father's parental rights is unwarranted on the existing record. Therefore, I join my colleagues in the decision to vacate the order terminating respondent-father's parental rights.

/s/ Christopher P. Yates